Thank you, Your Honor. I was going to reserve four minutes for rebuttal. You may do so. Just watch the clock. May it please the Court, my name is William Payne, and with me is Josh Young, and we represent the appellants. In this case, pension plan participants were denied benefits in their summary plan descriptions, or SPDs, that these SPDs said they would get, and this was because the company ignored the SPDs. Instead, the company applied some offset language in voluminous plan documents called the 2003 restatement. The 2003 restatement was in direct conflict with the SPDs, which didn't disclose this offset, and whether there was in fact this conflict was already decided when the issue was the subject of our appeal before this same panel three years ago. The panel found that there was in fact a conflict that created what the Court called an egregious ambiguity. But on remand, the District Court for the second time entered summary judgment for the defendants on the ground that plaintiffs couldn't establish a, quote, detrimental reliance on the SPDs. The cases of Burke and Banuelos represented the law at the time, and this panel cited these very cases and said simply that in the Ninth Circuit, the SPD is a plan document, so the ERISA defendants are bound to follow the more favorable of the two conflicting documents. We thought that given this Burke and Banuelos line of precedent, this Court wasn't requiring any showing of detrimental reliance on remand. In fact, the defendants acknowledged this in their petition for rehearing en banc, which was denied. But as I say, the District Court granted summary judgment anyway, saying we had to prove detrimental reliance. But at the time of this first appeal, and even when the District Court entered summary judgment the second time, we obviously didn't have the benefit of the Supreme Court decision in Amara v. Cigna, since it wasn't decided until after we appealed the second time. And our appeal was, in fact, put on hold pending the outcome of Amara. Now, in Amara, the Supreme Court concluded that SPDs are not plan documents and that accordingly Section 502A1B of ERISA for breach of plans couldn't help us when there's an SPD misrepresentation. Now, this really overrules Burke and Banuelos, which again held that SPDs were plan documents. But saying that equity doesn't like an injury without a remedy, the Supreme Court also held that if a participant frames his SPD claim as a fiduciary breach, because there's a duty to disclose under fiduciary duties, then he can use Section 502A3 for a broad range of equitable remedies, including the make-all relief of surcharge and reformation. Counsel, can you hear me all right? Yes, I can hear you, Judge Graber. Yes. My question is whether in this new context the District Court's finding or conclusion that there is no detrimental reliance, that there was no reliance of any kind, and therefore no harm would foreclose these other forms of equitable relief as well. No, Your Honor, because detrimental reliance, as the Supreme Court specifically said in Amara, is not the same thing and is a much lesser standard, or detrimental reliance is a much harder standard than, quote, harm required for surcharge. First of all, even the harm requirement, which they said was much a lower standard than detrimental reliance, it isn't in the Court's discussion of reformation. In other words, the harm requirement isn't required for reformation, which is one of our two theories that we think is available. Well, when you call upon the Court of Equity to remedy, use an equitable remedy, you have to have some injury or some wrong that is being remedied. How were these plaintiffs hurt by this egregious ambiguity? Well, Your Honor, I think the facts show that there was a lot of hurt going on at the time of the Litton sale. This was a very stressful time for people. They were near the end of their career. The new company came in and told them that this new plan is going to be like your old one. The first thing they did is issue an SPD. The SPD said that your benefits would be based on an annual benefit equal to 60% of your pay, and they did not disclose the offset. They said this would be credited with the 5% interest. And this really spread like wildfire because of the SPD. Now, even on the harm part that the Supreme Court said was necessary for surcharge, they said harm can simply be the deprivation of an important right under ERISA. The SPD is a very important document that's supposed to disclose to all participants. But isn't the implication, if not the clear meaning of Amara or Cigna, that an equitable claim could arise if there is intentional misconduct by the company? Is there anything in this record that suggests that there was intentional misconduct here, intentional in an effort to somehow mislead the employees? Your Honor, the requirement to have, that the defendants say is a requirement to have an intent to deceive, really raising the level of fraud. You have fraud or nothing else. You can't get reformation if you don't have it. We disagree with that. And we admit that there's no evidence uncovered that shows that defendants actually drafted that first SPD in early 2003 with the specific intent to deceive people into believing there wouldn't be an offset. But there's plenty of evidence that they knew early on that the SPDs were deceptive and that people were, in fact, deceived. They knew that. And they did not then go and disclose it to people. And, in fact, they created another 2005 SPD that didn't disclose the offset. And we think that's... Counsel, it seems to me that, as I read Amara, the only harm that really was suffered here was the absence of an accurate SPD. So I don't understand how that can result in anything other than the empty supply of a new document at this time. There are no lost benefits here that are in the actual plan as the Supreme Court has defined the plan. Well, I think you could really say the same thing about Amara. The facts are really not that much different. They had an SPD there, really an SMM, which was the same thing, that was saying your benefits will be just as good, but they weren't. And people were operating on a widespread basis on the assumption that they were better in Amara. Well, the Supreme Court didn't require any particular remedy. It sent it back to think about it, but there was no promise of a remedy in that situation. Right. And it's conceivable Cigna could convince the lower court that, well, this is a pyrrhic victory. But that's going on right now. The DOL has filed a brief in the case that says there should be a remedy. And one of the things that was happening both in Amara and here is they were concerned about an uproar at a very crucial time. And that's specifically in the records, their emails. They're saying we are worried about a, quote, disruption, an uproar, if people know about this. And when Skinner finally gets his papers at the end of 2004, he just can't believe what they're saying, that there's going to be this offset that's going to cost him basically $126 a month for the rest of his life. And he goes to them. He asks them. They give him the runaround. He has a meeting eventually with Clark. She doesn't really give him a definitive answer in early 2005. And then they send all these emails, and they say, call in the liars. These people are deceived. But we don't want to create a disruption. So let's have some new town hall meetings. And one of the slides will mention an offset. These are the last town hall meetings. The damage was already done because there were 2003 town hall meetings that didn't disclose the offset. But these ones at the very end, they said, and this is quoted in our reply brief, they said, let's not disclose the specific reason we're having these because we don't want to cause an uproar. That's really the same as Amara. And how can you, as the Supreme Court said, it's really a situation created by fiduciaries where you don't know what would have happened if there were an uproar, if they had given them accurate information. Perhaps the people would have said, we don't want to have a cut in our benefits. And maybe they would have changed their mind. But you can't unscramble the eggs. So I think that's why they're not requiring this detrimental reliance. Instead, they just say harm. And harm, they say, can simply be being deprived of this important right under ERISA. Now, I acknowledge that if nobody knew about the SPD because nobody read it, and the word hadn't spread that there was really an offset that wasn't disclosed, if that had been the fact, then I think you have a situation where there's no, quote, harm for surcharge purposes, but where it's widely known. And then they call another round of town hall meetings to address the issue. And they send out the memos that say, call in the lawyers. We've miscommunicated. And, in fact, there's a good e-mail by this clerk that I think recaps everything. And this is at the excerpt from Record 1293, where she recaps everything that happened, I think, internally in February 2005. And she says, geez, these people really believe there's no offset. We misled them. And it was intentional, she says, because we had thought that the 1998 thing had disclosed the offset. So it was intentional that we didn't put it in there. And so this is Northrop Grumman. Well, who is she? Well, she's the benefits person who's sending to other benefits people. And she says, I acknowledge, we must have thought it was disclosed in the 98. Well, now, has it been established who authored the SPD itself? Is it the committee? Is it the company? You know, frankly, Your Honor, I can't remember. I think that the evidence is that it's the benefits people drafted for the company, and it goes sort of by committee. And we have sued the committee as a fiduciary. And we've alleged a fiduciary breach in Count 4 of the complaint. It's true that that Count 4, the one that the judge refused to let us amend, says A2 instead of A3. But otherwise, it nicely anticipated the Amara case because you have fiduciaries who are responsible for making these communications. And they did not communicate in the way required by the statute. I want to go back to this 98 SPD that Ms. Clark is referring to because this was crucial to the court's last decision. So Ms. Clark is not part of the committee? Is that what you're saying? She works for the committee. She's in their benefits department. And I don't believe she's actually one of the committee. No, she's not one of the committee members. But she's sending this to the committee, and there's a group of people that are looking it over and saying what they should do to rectify the situation. But what this whole thing is, a very crucial point, I think, is the same point that came up during the last oral argument and came out in the court's decision. It's because the company keeps trying to resurrect this argument. They say that there is no conflict between the SPDs and the plan. And the reason they say that is because even though the 2003 and 2005 SPDs say these things will be treated to 4% as if you worked and it will be credited and it doesn't disclose an offset, they say there's a reference to historical plans. And then that should be a key for people to look back at the 1998 SPD. And they say if you look at the 1998 SPD, it tells you there will be an offset. But the court said during the last opinion, contrary to counsel's assertion in oral argument, the 1998 SPD indicated that the offset applied only to participants accepting lump sum distributions of their FSSP retirement accounts. That's what they were putting in the account. And what this leads to, if you look at this 1998 SPD at that point, it's very clear. There's this example of a hypothetical employee named Paul. And it says if you leave your contributions in there and roll them over in the plan, then there is no offset. And you get to keep all of your quote, accrued benefits. Then it says only if you decide to take them all out, where will there be this offset of the annuitized value? And so the court was referring to that. And the court also said the even earlier SPD from 1988 was superseded by the 1998 one. And, counsel, you're down to about three minutes. It's your choice. I'm sorry. I should say the rest for rebuttal. But I do think that that puts to rest the claim that there was no offset. And it also relates to really how egregious this misrepresentation was about there being no offset. Thank you. Thank you, counsel. We'll hear from the company. Good afternoon, Your Honors. May it please the court. My name is Nancy Ross, and I'm on behalf of the appellees here. Your Honors, before I explain why this court should affirm the district court's opinion, I will answer what appeared to be a question that you posed to my colleague. The SPD, the language in the SPD, was drafted actually by Linton. As this court recognized in its first opinion, Northrop incorporated by reference the former SPDs to explain the past plan. So that particular language was not written by anybody at Northrop Grumman. Your Honors, there are four reasons why this court should affirm the district court's opinion and need not remand it. The first is that this case is not Cigna. Now, Judge Goodwin, as you recognized, one of the critical differences is Cigna was a remedies case. Because by the time the case got to the Supreme Court, there had already been a finding of a violation of ERISA. In fact, the violation that had been found in Cigna was that there was a reduction in the rate of benefit accrual as a result of the new Cigna cash balance. And on top of that, the courts had found that there was an intentional effort to mislead the employees in Cigna. They did not want them to know about the reduction in their benefits because they thought it would cause an uproar or cause people to challenge it. So what you have at the heart of Cigna, you don't have here. You don't have a finding of any violation of ERISA here by the district court. And you also have a court, a district court, that had two opportunities here to review the record. And with two opportunities to look at the exact facts here, the court found that there was no intention to mislead. And that is at the excerpts of record at 17, Your Honors. Counsel, that can't be exactly the way you said it because this was a decision on summary judgment, was it not? It was, Your Honor. So how could the court have made a finding in the sense that we would be bound by it in the absence of clear error? The court shouldn't be making findings. I believe the court was analyzing the breach of fiduciary duty claim under Count 4, Your Honor, at the time, and looking to see whether or not there could be any fiduciary breach here. And in the course of that, the court found that there was no evidence of any intent to mislead. The second reason that the court can and should affirm this case is that there is no 502A3 claim before this court. That is exactly the claim that was before the Supreme Court. The only counts that are in front of this court on appeal are Counts 1, which was the Section 502A1B claim that Cigna dispenses with, as my colleague recognized, and Counts 4. And Count 4 is a breach of fiduciary duty claim brought under Section 502A2. So we don't have an A3 claim pending for the very reason that the plaintiffs affirmatively relinquished that claim. Now, Judge Walter found that they relinquished it by not responding to our summary judgment. But on appeal, the plaintiffs at Excerpts of Record 166, Note 8, affirmatively stated that they were no longer seeking remedy under Counts 3, which was a 502A3 claim, and Counts 5, which was a 204H claim. So on the Count 4, on the 502A2 breach of fiduciary duty, Judge Walter got it right. The two defendants in this case are the plan. Well, a plan, by law, cannot be its own fiduciary. So that claim did not work against the plan. And with respect to the Administrative Committee, Judge Walter said that what the plaintiffs were really claiming had to do with the amendment process. And amending a plan is not a fiduciary function, but rather a set work function. So Judge Walter correctly found that plaintiffs could not substantiate a claim under 502A2. There's an additional reason that Judge Walter did not address, Your Honors, but 502A2, under the Supreme Court's decision of LaRue and Mertens, has to, it serves to protect plan assets. Plaintiffs here are not seeking to protect plan assets. Plaintiffs here are seeking to increase the benefits that they themselves believe they are entitled to under the plan. The third reason that this Court should affirm is because the record here does not call for any of the equitable remedies that the Supreme Court identified in Cigna. Now, we also have to recognize that Justice Scalia commented in his concurrence that he believed that all of the discussion about appropriate remedies was dicta. But notwithstanding Justice Scalia's conclusion, plaintiffs are asking this Court for one of two remedies. One is reformation, and the other is surcharge. Well, reformation, as the Supreme Court made clear in Cigna, requires out-and-out fraud. And as Judge Walter found, there was no fraud here. The record does not evidence any fraud. In fact, the record shows that there were other materials that came out, the 204-H notice, which is at Supplemental Excerpts of Record 251 and 252, telling people about this new arrangement. And that was back in 2003, at the very beginning of this. So there's – and then, of course, my colleague referred to various e-mails that plaintiffs interpret to show that there was some sort of collusion here. I will note that that argument, first of all, was never made to the district court. But more importantly, if the Court looks at all of those e-mails, they are all in response to the claim that Mr. Stratton and Mr. Skinner had brought before the Benefits Committee. So it was as a response of the Benefits Committee all of a sudden recognizing that these two individuals, and perhaps others, were confused. And, oh, my Lord, what shall we do? And there was all sorts of colloquy back. And, yes, somebody panicked and said, quick, we need to pull all the communications. Somebody else said, we need an attorney. But that does not evidence at all that there was any intentional effort to deceive, such as is in the Cigna case. The other remedy that plaintiffs are seeking is a surcharge. And – With respect to that intent to deceive, you heard Mr. Payne's response to my question. Do you have any comment? I'm sorry. As far as whether Cigna is intended to apply to intentional? Well, I asked is there any indication in this record of an intent to deceive? That's right. And I – there is no evidence in this record. Well, did you hear Mr. Payne's response to my question? Well, Your Honor, with all due respect, the problem that I have is that I have had difficulty understanding the plaintiff's argument in this case. Okay. Very well. Thank you. Because it seems a bit rhetorical. And I apologize for that. But what I can tell this Court is Judge Walter, having reviewed it two times, found that there was no intent to deceive. And if you look at all the materials, if you look at the announcement that went out, and if you look at the very fact of what this was all about, this was a change, as this Court recognized in the first appeal, this was an adoption of a cash balance plan. And the company did not want to penalize people right off the bat. So the intent here, if there was any intent, was to protect people, not to deceive people. And what the company said is for the first five years of this change to a cash benefit that you got under your previous plan or the new cash balance plan. So that in and of itself shows that the company was trying to protect these people, not deceive these people in any way. The second remedy the plaintiffs are seeking, where there is no evidence in the record, is surcharge. And as this Court has recognized, surcharge does require proof of actual harm. Well, I find it very telling that in the plaintiff's briefs to the district court, they spent their entire time arguing that you do not need to show reliance in order to recover on a faulty SPD. And whether that was or was not the law at the time, what plaintiffs never argued was that they were harmed by any such reliance. They never pointed to any evidence in the record by showing that they suffered any harm. And that's because there isn't. If plaintiffs' argument of harm in their briefs to this Court are all because they got a misleading SPD. But if that was all that was required for actual harm under the Supreme Court's analysis in Cigna, we would be back to strict liability. It's very circular. So plaintiffs, the very fact that they got what the plan provided, they got the greater of their past or future benefit. They have no harm to which they can point to in the record. Finally, Your Honors, the fourth reason that this Court need not remand is because the plaintiffs themselves have asked this Court not to remand on the merits. They've only asked that the Court remand with instructions to enter summary judgment in their favor or find in their favor. And that is at page 53 of the plaintiff's opening brief to this Court. And finally, if this Court is not inclined to affirm the district court's decision, which it should, then we would ask that the court do remand it to the district court with instructions for the district court to first determine whether Cigna  Thank you, Your Honor. Thank you, Counsel. Mr. Payne, you have some reserve time. Yes, Your Honor. I'll try to go fast because I know I didn't reserve enough time. Ms. Clark says that they got the same benefits. They didn't have a reduction. Well, I think that the as I was explaining before, if they had a reduction, had an offset that didn't exist before, they suffered a reduction. The Poulin declaration and, you know, what the pages we cite in our brief show that there was a real reduction. And Mr. Skinner's was $126 a month difference. Ms. Clark, the same person I was referring before in her very long email recapping the whole situation, she says that because this offset now applies, even though people don't get to take the money, she says the end result is when we apply the offset, Grumman gets to keep the money at the end of the day. And before, the participant got to keep the money and roll it over. And that's a reduction. I'm confused by something. Are you saying that the financial harm arises because the terms of the SPD were not followed? Or are you saying the financial harm is as a result of failure to follow the actual plan itself? No, no. The actual plan itself, buried there in the six inches, did have the offset. Okay. So what you're talking about is, again, the SPD. Is there any evidence that what was required by the plan documents themselves was not actually paid? Well, except for the typo that had the 60 percent times the 40 percent, which we're not putting our hat on that because that would escalate the benefit by 10 times. The plan was followed. But that isn't the document people had. I think when I was talking just now about how there was a reduction from what the SPD said you would get, I was refuting what Ms. Ross was saying that, no, there was no reduction. People got all this. But the essence of your case is that the language of the SPD trumps the language of the plan so far as your plan is concerned. Yes. And what we're saying is that the harm test is no different here than it was in Amara because there was a reduction in Amara and there was a reduction here from what the SPD said you were going to get. And that coupled with the fact that the misrepresentation came within an SPD and the company knew it and they were trying to avoid the uproar, as Ms. Ross said, I think that that is really the same factual background that you have in Amara that they said could be harm, but they left it to the district court to decide. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision and the court will adjourn.
judges: Goodwin, O'scannlain, Graber